IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH PARTICULAR CELLULAR TOWERS | Case No. 2:24-mj-197 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler Schwab, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a warrant for records and information associated with certain cellular towers ("cell towers") that is in the possession, custody, and/or control of AT&T Wireless ("AT&T"), a cellular service provider headquartered in North Palm Beach, FL; Verizon Wireless ("Verizon"), a cellular service provider headquartered in Bedminster, New Jersey; and T-Mobile US, Inc. ("T-Mobile"), a cellular service provider headquartered in Parsippany, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T, Verizon, and T-Mobile to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 6, 2019. Your Affiant has been assigned to the FBI Safe Streets Task Force in Columbus, Ohio, since January of 2023. Prior to being assigned to the Safe Streets Task Force, I was assigned to the Joint Terrorism Task Force (JTTF) for approximately four years.

During my assignment at the JTTF, I was a Case Agent and Co-Case Agent for multiple international and domestic terrorism investigations. While assigned to the JTTF, your Affiant has received specialized training in international terrorism and homicide investigations. Furthermore, I have received training in computer-related crimes as well as in the criminal use of email, social media, and telephonic communications.

3. The facts in this affidavit come from information obtained from other law enforcement organizations to include the Columbus Police Department, Reynoldsburg Police, Department, Upper Arlington Police Department, and Bexley Police Department. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C § 2113 (bank robbery and incidental crimes) have been committed by an unknown person. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation into violations of 18 U.S.C. § 2113. The current investigation involves a pattern of bank robberies where the suspect enters a bank and hands the bank teller a note requesting cash. As of this writing of this affidavit, three bank robberies that have occurred between April 8, 2024, and April 10, 2024, that are believed to have been attempted/committed by the same individual.

**Bank Robbery #1-Fifth Third Bank, 6935 E. Main Street, Reynoldsburg, Ohio**

6. On April 8, 2024, at approximately 10:40 a.m., Detectives with the Reynoldsburg Police Department responded to 6935 E. Main Street in reference to a bank robbery. Upon arrival, the detectives learnt that a suspect entered the Fifth Third Bank wearing a lime green hoodie, blue latex gloves, black hat, black face mask, dark sweatpants, white dress socks, and gray loafers. The suspect approached the teller and presented a note that stated, "Give me $20,000 and empty your drawer." The suspect did not receive any money and eventually departed the bank.

7. Fifth Third provided the below photo of the suspect from April 8, 2024.



**Bank Robbery #2-JP Morgan Chase Bank, 4550 N. High Street, Columbus, Ohio**

8. On April 10, 2024, at approximately 10:02 a.m., Detectives with the Columbus Police Department responded to 4550 N. High Street in reference to a bank robbery. Upon arrival, the detectives learnt that a suspect entered the JP Morgan Chase Bank wearing a green hoodie, blue cloth gloves, and a black face mask. The suspect approached the teller and stated, "I need to make a withdraw." The suspect then lifted a handwritten note that stated, "I have a gun. Clear the drawer 100s, 50s, and 20s." The teller then told the suspect that they needed a key

3

and went to the back room. The teller then notified the other bank employees and the police. The suspect eventually figured out that the teller was not going to come back and fled the scene on foot without receiving any money.

9. Below is a picture of the perpetrator of this robbery.



**Bank Robbery #3-Fifth Third Bank, 1960 N. High Street, Columbus, Ohio**

10. On April 10, 2024, at approximately 10:12 a.m., Detectives with the Columbus Police Department responded to 1960 N. High Street in reference to a bank robbery. Upon arrival, the detectives learnt that a suspect entered the Fifth Third Bank wearing a green hoodie, blue cloth gloves, and a black face mask. The suspect approached the teller and stated, "I need to make a withdraw." The suspect then lifted up a handwritten note that stated, "I have a gun. Clear the drawer 100s, 50s, 20s." The teller then provided the suspect approximately $3,000 and the suspect fled the scene on foot.

11. Fifth Third Bank provided the below photo of the suspect from April 10, 2024.



12.     I know that the locations of the above robberies are all in the Southern District of Ohio, Eastern Division.

13.     It is my belief that the deposits of the above banks were all insured on the dates and at the times of the robberies by the Federal Deposit Insurance Corporation.

14.     It is the belief of the affiant that all three robberies were committed by the same suspect based on facts that the description and photos obtained of the suspect in all three robberies show an individual wearing a lime green hoodie, some form of blue gloves, and a black face mask.  Additionally, all three robberies occurred within a few days of each other.  In my training and experience when an individual attempts to commit a robbery and is not successful, they often attempt another robbery soon thereafter.  In this case, the suspect was not successful in obtaining money during robbery #1 and robbery #2.  The suspect kept trying until he was successful at obtaining money during robbery #3.  The suspect in all three robberies also used similar modus operandi.  In my training and experience, I know that sometimes individuals that commit multiple robberies will use similar tactics and techniques in each robbery they commit.  In robbery #1, robbery #2, and robbery #3, the suspect approached the bank teller and presented

a note demanding money. It appears that the suspect used the same note or a different note with the same language in robbery #2 and robbery #3.

15. In my training and experience, I know that criminals who commit robberies often carry cellular devices and will use those cellular devices to facilitate the commission of their offense, such as by using the phone for directions to drive away, or to communicate with other participants involved in the robberies. Suspects often carry cellular devices and use them during robberies to coordinate plans and logistics with each other, or to navigate to and away from certain locations, including the site(s) of the robbery. I also know from my training and experience that "cell phones and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one is indispensable to participation in modern society." *Carpenter v. United States*, 585 U.S. 296, 315 (2018) (quoting *Riley v. California*, 573 U.S. 373, 385 (2014)). It is therefore likely that the suspect in robbery #1, robbery #2, and robbery #3 was carrying a cellular device and may have used it to communicate with other unknown individuals via cellular device prior to or just after the robberies took place and/or used their cellular devices for navigation purposes.

16. In my training and experience, I have learned that AT&T, Verizon, and T-Mobile are companies that provide cellular communications service to the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.

6

17. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

18. Based on my training and experience, I know that cellular providers, such as AT&T, Verizon, and T-Mobile, routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications. For each communication sent or received via the wireless provider's network, these records may include: (1) the telephone call number and unique identifiers of the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.*, face of the tower) to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication

19. Based on my training and experience, I know that cellular providers, such as AT&T, Verizon, and T-Mobile, can query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period of time and to produce

7

the information described above. I also know that cellular providers can determine which cellular tower(s) provided coverage to a given location at a particular time.

20. Based on my training and experience and the above facts, information obtained from cellular service providers, such as AT&T, Verizon, and T-Mobile, reveal which devices used a particular cell tower (and, where applicable, sector) to engage in particular communications. This information can also be used to show that such devices were in the general vicinity of the cell tower at the time the communication occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of the relevant locations at the time of the crimes under investigation. This information, in turn, will assist law enforcement in determining which person(s) were present for each robbery.

21. By requesting information for specific locations in a narrow period of time, the United States intends to limit the amount of information it receives relating to innocent third parties. Additionally, the interest of investigators is primarily on identifying individuals who were present at more than one of the specified locations during the specified dates and times, in order to identify a possible suspect. This further reduces the United States's intent on seizing information related to innocent third parties. Lastly, with these warrants, the United States is not seeking the content of any communication, and as a result, the imposition on the privacy interests generated with these warrants is further reduced.

## AUTHORIZATION REQUEST

22. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

23. I further request that the Court direct AT&T, Verizon, and T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its

possession, custody, or control. Because the warrant will be served on AT&T, Verizon, and T-Mobile, who will then compile the requested records at a time convenient to those carriers, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

24. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
Tyler Schwab
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on April ___12___, 2024.

_____
HONORABLE CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE